BROOKLYN UNION GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20176, 23380.   Promulgated March 4, 1931.

*Barry Mohun, Esq., George E. Elliott, Esq.,* and *Arthur E. Goddard, Esq.,* for the petitioner.

*Brooks Fullerton, Esq.,* for the respondent.

508

514

522

OPINION.

TRUSSELL: Prior to the hearing of these proceedings, petitioner filed a motion under Docket No. 23380, which was taken under advisement at the hearing, this motion requesting that judgement of no deficiency be entered for the reason that respondent's answer in that proceeding was filed subsequent to April 3, 1927, the expiration of the 60-day period within which it was required to be filed under Rule 14 of the Board's rules of practice.

The record shows that by formal motion filed within such 60-day period, respondent requested an extension of time within which to answer, this request being granted, and within the period of such extension requested, in similar manner, a further extension which was granted, the answer being filed within the period as so extended. Petitioner's motion must be denied. The right of the Board to grant, in its discretion, an extension of the time for pleading provided by its rules, even upon a request for extension made subsequent to the expiration of the 60-day period provided, has been upheld. *Shults Bread Co.*, 10 B. T. A. 268; *Board of Tax Appeals ex rel. Shults Bread Co.*, 37 Fed. (2d) 442; certiorari denied, 281 U. S. 731.

In respect to items covered by assignment of error (g) representing deductions disallowed for 1922 in amounts of $56,110, $5,000, and $8,400.50, respondent confesses error. Income as determined by respondent for that year should be accordingly adjusted by deduction of these amounts.

By assignment of error (a) is presented the question as to whether certain monies, hereafter referred to as " excess monies," representing that portion of the charges by petitioner and its affiliated companies for gas manufactured and distributed in the years 1916 to 1922, which were in excess of the rates provided by State law represent income to them in the year in which the gas was sold, the year in which the monies were actually received, or the year 1922, in which was concluded certain litigation whereby their right to charge the higher rates was finally sustained.

Respondent, in computing the deficiencies here in question, has included these excess monies in income for the year 1922. His contention is that not until that year, when the litigation to fix fair rates was determined by final court decree, were these companies unconditionally entitled to these funds, and accordingly so long as they were not possessed of such right no basis existed for their accrual as income, even though the charges represented services rendered in years prior to 1922 and the cost to those companies of this service in each year was accrued as expense of that year.

Petitioner contends that its right and that of its affiliated companies to charge the higher rates and their right to collect, retain, and use the excess monies existed in each of the years in which the charges were made and these monies collected and impounded. It argues that in each of the years in question that right existed under the law; that for no year did that right accrue by reason of something occurring subsequent to its close; that the final court decree, under which liability bonds in respect to the excess monies were discharged, granted these companies no right but merely recognized and determined the right as having existed in each of the taxable years in question, and that the only postponement of event to a subsequent year was that of *receipt* of the funds not their *right to receive*.

Respondent contends that the rule is that only those sums which the taxpayer has a legal right to receive may be accrued as income. He further contends that amounts which are contingent upon the outcome of contested litigation can not be considered as of this character and cites in support of his contention *Dodge* v. *Bloomer*, 64 Ct. Cls. 178; *Kales* v. *Woodworth*, 20 Fed. (2d) 395; *Rosetta* v. *Hauss*, 12 B. T. A. 755. These cases are, on the facts, not in point as in each instance the litigation which delayed the receipt of income was brought to enforce distribution by a corporation of a portion of its accumu-

lated surplus, these petitioners being stockholders. The surplus in question was that of the corporation until distributed. Not until that time did it become income to these stockholders. The right which they had was not a right to the surplus as such, but a right to force a distribution. The question decided by these cases is merely that a stockholder is not taxable on account of corporate surplus until it is distributed to him or in other manner made unqualifiedly subject to his disposition.

We can not agree with the theory that a taxpayer maintaining his accounts on an accrual basis may accrue as income only those uncollected accounts pertaining to the current year in respect of which there is no contested litigation. The enforcement of such a rule would make impossible a regular and consistent method of accrual reflecting income with reasonable accuracy. The contesting of liability by a debtor is often merely for the purpose of delaying collection and in such case, we think, it could not be argued that the liability asserted by a creditor and represented by a bill receivable on his books was not subject to accrual as income in the amount claimed by him to be owing. Nor could it be held that only amounts which the taxpayer claimed as legally due and which he had in fact a legal right to collect could be accrued, for there would be no way to segregate such items. Their determination must necessarily await in each case the final decision of the court.

Respondent quotes the language of the Supreme Court in *Lucas* v. *American Code Co.*, 280 U. S. 445, that " generally speaking the income tax law is concerned only with realized losses as with realized gains," and argues that the same principal applies to both deductions and gains and cites many decisions of the courts and of the Board in respect to deductions as showing that a liability which is being contested by the taxpayer and the existence of which was a legal obligation can not be known until the litigation is terminated, does not represent to him an allowable deduction until final determination by the court.

With this view we can not agree. We think that a taxpayer on an accrual basis who renders service in a taxable year and asserts in that year a right to payment in a given amount is then chargeable with income in that amount if, at the close of that year, all of those conditions have been met, all those things done, which give rise to the right asserted, irrespective of the fact that the right may be contested and ultimate collection may be postponed until some future year. In such case the right to receive the income is a right then perfected and the litigation later concluded merely determines the right as having existed in the former year. We can see no difference in the case of a right to income asserted by a public service com-

pany whose charges are regulated by State law. Respondent contends that the excess monies collected and impounded represent illegal exactions and as such were not subject to accrual; that the only amounts which petitioner and its subsidiaries could legally charge were the amounts fixed by State law. This theory overlooks the fact that petitioner's charges are not determined by State law alone, but by that law as limited by the constitutional guarantee against confiscation of property.

In the calendar year 1916, the cost to petitioner and its subsidiaries of furnishing service to its customers had increased to such a point that it amounted to as much or more than the charges then permitted by State law and orders of the State Public Service Commission. Under such conditions the enforcement of the prescribed rates resulted in the confiscation of the property of these companies, and being entitled under the constitutional guarantee to higher rates, they asserted such right by proceedings in court, secured a restraining order against the enforcement of the confiscatory rates, and by permission of court charged and collected higher rates, the court impounding the excess monies over and above the rates permitted by State law until, after proof, decision could be reached upon petitioner's asserted right. After several years, during which the higher rates were charged, final decision was rendered in 1922, holding in each of the years in question, the prescribed rates were confiscatory and that petitioner in such years was entitled to collect the higher charges as made.

By this decision petitioner and its affiliated companies acquired no right. The decision merely determined the right to have existed in each of the prior years. In each of those years these companies manufactured and distributed the gas for which these charges were made, at all times asserted a right to collect and collected for this service these amounts, including the so-called excess monies, and, in each of such years, *actually possessed the right* to receive these amounts in excess of the charges prescribed by State law. By nothing which occurred subsequent to the close of these years was petitioner's right to the excess monies for such years perfected. It was a right in each year existing at the close thereof and later determined by the court to have then existed, this determination being upon the basis of conditions existing and facts transpiring within such year.

We can see no material difference between this question and that presented in the so-called *Federal Control Cases*, in which properties of railroad companies were taken for public use under act of Congress (40 Stat. 451) providing that just compensation be paid for such use. In each of those cases the amount of the compensation

was disputed and not determined until several years subsequent to return of these properties to the owners. In respect to the rentals so determined and paid, it was insisted, as in this case, that they could not be accrued as income of the years for which paid, as the act under which the properties were taken did not fix their amounts, and no amount could be considered as due and owing until determined, and consequently these amounts were only accruable in the later years when determined. In these cases we held that the right to just compensation guaranteed to the owners by the act in question as well as by the Federal Constitution was complete in each year of use, and only the determination of exact amount and payment were postponed and, accordingly, the rentals represented income to the companies accruable for the years in which the Government's obligation to make and the taxpayer's right to receive payment arose. *Old Dominion Steamship Co.*, 16 B. T. A. 264; *Great Northern Railway Co.*, 8 B. T. A. 225; *New Orleans, Texas & Mexico Railway Co.*, 6 B. T. A. 436; *Virginia Carolina Securities Corporation*, 6 B. T. A. 84; *Cincinnati, Findlay & Fort Wayne Rwy. Co.*, 5 B. T. A. 108; *Illinois Terminal Co.*, 5 B. T. A. 15. See also *Kansas City Southern Railway Co.*, 16 B. T. A. 665; *Western Maryland Railway Co.*, 12 B. T. A. 889; and *Missouri Pacific Railway Co.*, 22 B. T. A. 267, in respect to the proper accrual in the year the service was rendered of sums determined in amount and received in subsequent years from the Government for carrying the mails.

The rule announced by respondent and applied in determining the deficiencies here in question has manifestly resulted in the distortion of income, a large part of the return from gas manufactured and distributed in the years 1916 to 1922, inclusive, being thereby allocated to the latter year, most of this income having been actually received in prior years, and as we said in *Ernest M. Bull, Executor*, 7 B. T. A. 993: "No method which fails to clearly reflect income has any justification or sanction under the law." We hold that the so-called excess monies involved herein represented income properly accruable in the years in which the service was rendered for which the charges were made and collected.

The conclusion reached on this issue also disposes of assignments of error (d), (e), and (f), the action taken by respondent in each instance and questioned by those assignments being merely the result of his action in allocating as income to the calendar year 1922 (and in the case of the Newtown Gas Company to 1923) the excess monies received and representing charges for service furnished in prior years. The action of respondent in respect to these items, in disallowing the deductions representing uncollectible accounts, is disapproved.

In respect to assignments of error (b) and (c) it is shown that New York State Franchise taxes assessed against petitioner and affiliated companies for the years 1910 to 1919, inclusive, were accrued by these companies as liabilities for those years, but due to litigation instituted by the companies in the courts to reduce the valuation used as the basis of the several assessments were paid only in part upon assessment. In subsequent years, upon final decisions of the several proceedings, such additional taxes as shown to be due, on the valuations determined by the court, were then paid. For each of the several years during which these taxes remained unpaid, interest accrued under State law upon the unpaid portions of the assessments, this interest being accrued by these companies in each year for which imposed and payment being made at the time the balance of the tax was determined and paid. Respondent has, in determining the deficiencies here in question, treated such taxes and interest as accruing in the several years for which imposed. Petitioner seeks their allowance as deductions in each case of the years in which paid.

Petitioner contends that the deductions representing property taxes and interest thereon are different in character from other deductions and that when disputed and litigated as to amount, even though accrued on the books for the year in which assessed, they represent proper deductions only in the year in which the litigation is finally concluded. Both parties cite *United States* v. *Anderson*, 269 U. S. 422; *New Orleans, Texas & Mexico Railway Co.*, *supra;* *Crown Willamette Paper Co.*, 14 B. T. A. 133, and agree that the rule is clear, that the accrual of a tax of this character is proper even prior to assessment if all of the events have occurred prior to the close of the year which fix the amount of the tax and determine the liability of the taxpayer to pay it. Respondent contends that the application of this rule to the facts as stipulated shows these taxes as accruable in the several years for which assessed.

Petitioner insists that this being a property tax, an attack in court upon. the valuation used as a basis of the assessment postpones until final determination by the court the fixing of the valuation upon which the liability for the tax is based and that this is postponement of an event necessary to a determination of liability, and accordingly accrual under such circumstances can be properly made only in the year of such final action by the court.

Upon careful consideration we can not agree with petitioner's theory. The litigating of the assessment by petitioner was purely a question of the determination of the amount of the tax, not of the liability. *Events* necessary to a final determination of the ques-

tions both as to liability for tax and the amount thereof existed at the close of the year for which in each case the tax was assessed. These *events* were the ownership of certain rights and privileges and the value thereof. These were facts existing in the year for which assessment was made and the action by the court in later years merely determined these facts or *events* as so existing.

We hold that these franchise taxes represent proper accruals as liabilities of the years for which assessed and not to represent allowable deductions of the later years in which determined in exact amount and paid. *Bartles-Scott Oil Co.*, 2 B. T. A. 16; *H. H. Brown Co.*, 8 B. T. A. 112; *Crown Willamette Paper Co.*, *supra.*

We further hold that the rule laid down with respect to the taxes in question applies to the interest accruing under State law upon that portion of the tax delinquent, such interest having been properly accrued by these companies in the year for which imposed. This interest may not be deducted in the later years in which it was actually paid.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*